WETZELL (YOUNG v.). See Case No. 18,-176.

---

## Case No. 17,472.

### The WEXFORD.

[6 Ben. 119.] [1]

District Court, E. D. New York. May, 1872.

SALVAGE—INEQUITABLE AGREEMENT—COSTS.

1. A brig, dismasted and in distress, was fallen in with at sea, by a pilot boat. The master of the brig had been hurt and was confined to his bed. Her owner was on board. The pilots boarded her and demanded $5,000, to tow her into port. This was refused, and they came down to $2,500, threatening to leave the brig if an agreement to pay that sum was not made. The master and owner thereupon agreed to pay them the $2,500, and the pilot boat took hold of the brig, and after nine days' towing, brought her in safety into the port of New York. The brig and her cargo were worth $3,800. *Held* that, considering the value of the property, the agreement, under the circumstances, was an inequitable one, and would not be enforced.

[Cited in Brooks v. The Adirondack, 2 Fed. 393.]

2. $1,500 was as liberal a reward as could be awarded to the salvors.

[Cited in The Marie Anne, 48 Fed. 748.]

3. Costs would be awarded to them, because the claimants offered no particular sum before suit brought.

In admiralty.

Barney, Butler & Parsons, for libellants.

Beebe, Donohue & Cooke, for respondents.

BENEDICT, District Judge. The libel is filed in this action, to recover salvage of the brig Wexford and her cargo. The material averments are, that on the 14th day of October, 1871, the pilot boat Isaac Webb, while cruising in about lat. 41° 11' and long. 66° W. discovered the brig dismasted and in distress; that at the request of the master, the pilot boat took the brig in tow, and, after nine days' towing, brought her in safety into New York; that the brig was helpless and unmanageable and short of provisions and

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

her crew exhausted; that the master and owner of the brig, at the time of the request aforesaid, agreed to pay the libellants the sum of $2,500, for the services they might render in towing the brig to a port of safety; that said sum was a reasonable sum for the services, but payment of it is now refused. Wherefore, the libellants pray the court to decree payment of said sum or such sum as the court shall consider reasonable for the salvage services.

The claimants of the brig and cargo, set up in their answer that at the time the captain agreed to pay $2,500 to the pilot, he was disabled and unfit to make a contract; that the pilots, to induce the bargain, refused to afford assistance without such a promise, and threatened to leave the vessel and captain, and that the bargain is unjust and inequitable, and not available to fix the amount of salvage which should be paid. That the claimants have always been willing to pay a fair salvage, but the pilots refuse to accept any less than $2,500.

Upon these pleadings, and the evidence adduced in support thereof, the first question is, whether the agreement to pay $2,500, which it is conceded was made by the master and owner of the brig, is to be taken for a guide, in determining the amount of the reward which should be paid to these salvors. Such contracts are not obligatory, unless it be made to appear that the rate is just, and was agreed to without pressure of any sort.

The circumstances under which the agreement was made, therefore, become important. It appears that the brig was dismasted and helpless at sea, some hundreds of miles from any port, but yet in the track of steamers, and tight. Her master had been hurt and was confined to his bed. The pilots boarded the vessel and offered to tow the vessel, if their compensation should be fixed at $5,000; but finally, after some hours of negotiation, came down to $2,500; and they plainly notified the master and the owner, who was on board, that they would leave the wreck, unless an agreement was made to pay them that sum.

In the condition the master was, the suggestions to leave him, in a vessel dismasted and without sails, must have had a forcible effect in bringing him to agree as he did to the amount demanded. The owner declined for some time to agree to pay more than $1,-000; but finally agreed to $2,500, with a plain intimation, that he considered the sum excessive.

The value of the property, for the towing of which this $2,500 was to be paid, did not exceed $4,000.

The vessel was a British vessel, built in 1869, of 267 tons registry, worth no more than $2,000—some say only $1,000—when brought to New York, and her cargo of coal was worth some $1,600, as I must suppose, for the evidence does not disclose its exact value. The value of the property saved, is

always an important element in determining what is a proper salvage.

This feature was not sufficiently considered by the pilots, when they demanded $5,-000 nor when they agreed on $2,500. The latter is a larger sum than could be justly given for the salvage of property valued at $3,600, accomplished under the circumstances shown here. The labor of the pilots was considerable through nine days, nor was it unattended with peril, and they might well receive for it $2,500, or a larger sum, if only the property saved had been of greater value. But on a valuation of the property saved at $3,600, $2,500 is too much. If the brig had been derelict, $1,800 would have been the salvage ordinarily awarded, and these salvors cannot claim to receive more than, or as much as if they had found the brig abandoned at sea.

I consider $1,500 to be as liberal a reward as can be given to these salvors, out of this amount of property; for that sum they must have a decree. I give them also the costs, because the claimants offered them no particular sum in cash, before suit brought.